UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

ZOM HOLDING, INC.,
ZOM ASSOCIATES, INC.,
ZH DEVELOPMENT I, LLC,

Debtors.
________________________________/

Lead Case No. 6:26-bk-08509-GER

Jointly Administered with
Case No. 6:26-bk-08511-GER
Case No. 6:26-bk-08515-GER

**PRELIMINARY OBJECTION BY GRAY SERVICES, LLC AND GRAY DEVELOPMENT GROUP, LLC TO DEBTORS' *EMERGENCY* MOTION FOR INTERIM AND FINAL ORDERS (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) APPROVING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) MODIFYING AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Gray Services, LLC and Gray Development Group, LLC (collectively, "Gray"), by and through undersigned counsel, files its preliminary objection[1] to the *Debtors' Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Approving Liens and Superpriority Administrative Expense Status, (IV) Modifying Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [ECF No. 8] (the "DIP Loan Motion") and in support thereof, states as follows:

1. Gray is the holder of a final judgment, dated May 12, 2026, against Debtor ZOM Holding, Inc. ("ZHI") in the approximate amount of $323,000,000, which judgment was entered

[1] This Objection is preliminary in nature because the DIP Loan Motion was filed late on Friday, October 30, 2026, and as set forth herein, there are a number of serious questions concerning the proposed relief that require further investigation and discovery before the Court should grant the extent of the relief requested at this early stage of the cases. Gray reserves the right to supplement this Objection and to seek any other relief from the Court as necessary, including seeking to dismiss these cases as bad faith filings or filing a complaint seeking substantive consolidation of the Debtors and the DIP Lender.

on a jury verdict returned against ZHI on October 3, 2025 (the "Verdict"), after the completion of a twelve-day jury trial in Arizona state court (the "Gray Judgment").

2. For the several reasons discussed below, Gray asserts that the DIP Loan Motion does not present the usual emergency request for debtor-in-possession financing designed to fund an operating debtor. Thus, the DIP Loan Motion should be continued out for at least three weeks, and this Court should require that the relief sought therein be substantially curtailed. To be clear, Gray does not seek to prevent the Debtors from operating their business (as limited as such business is) during the initial stages of these Chapter 11 cases. Rather, Gray asserts that the relief sought in the DIP Loan Motion is not an emergency and given the substantial issues with the historic transactions between the Debtors and the proposed DIP Lender, ZOM Holding, LP (the "DIP Lender" or "ZHLP"), the bulk of such relief is certainly not warranted at this time. To be clear, ZHLP is an insider of the Debtor.[2]

3. Under the applicable law, the relevant inquiry for an insider DIP loan is whether the transaction, taken as a whole, is fair to the estate and creditors. It is not merely whether the stated interest rate is favorable as suggested by the Debtors in support of this insider DIP Loan. Under the facts of these cases, that standard has not remotely been satisfied. *See Pepper v. Litton*, 308 U.S. 295, 306–08 (1939); *Estes v. N & D Props., Inc. (In re N & D Props., Inc.),* 799 F.2d 726, 731 (11th Cir. 1986).

---

[2] The Debtors do not advise the Court that ZHLP is an insider until page 22 of the DIP Loan Motion and then only by generic references to insider DIP loans in footnote 5. Insider transactions are subject to searching scrutiny where the insider stands on both sides of the economic relationship. *See Pepper v. Litton*, 308 U.S. 295, 306–08 (1939); *Estes v. N & D Props., Inc. (In re N & D Props., Inc.),* 799 F.2d 726, 731 (11th Cir. 1986).

4. Specifically, and fundamentally, the Debtors' own Budget demonstrates that there is no present need for any ***emergency*** financing, which wholly undercuts the relief sought therein. The Debtors' Budget demonstrates that they do not need the proposed DIP Financing in order to fund their ordinary course operational expenses. Rather, the proposed DIP Lender is already funding those ordinary course expenses as an obligation through the Management Services Agreement referenced in the DIP Loan Motion and DIP Declaration, and not as a loan to the Debtors. The Debtors acknowledge and admit that pursuant to the Management Services Agreement, the Debtors provide ZHLP with the employees, executive oversight, accounting, tax, information technology, risk management, administrative and other services necessary for ZHLP to operate ZHLP's business, and ZHLP pays for or reimburses the Debtors for those costs. The DIP Declaration expressly states that ZHLP reimburses those services "at cost," which means that the Debtors incredibly do not earn any profit from their business operations and services provided to ZHLP. *See* DIP Decl. ¶ 9. In fact, the Debtors' business operations appear to be limited to providing these management services to ZHLP at cost as well as to one other entity – Stonebridge REIM Inc. (which upon information and belief is also an insider of the Debtors).[3]

5. The Budget confirms this point. During the initial 13 weeks of the Budget, the Debtors project approximately $3.08 million of operating disbursements, which are paid for by approximately $2.47 million in "at cost" management fees received from ZHLP, and approximately $700,000 of other operating receipts, including fees from its other insider, Stonebridge. Importantly, the Budget expressly shows that there is simply no need for any DIP financing for the period from the beginning of the Budget through the week ending November 20,

[3] The First Day Declaration states that Stonebridge reimburses the Debtors for payroll and pays an accounting management fee in return for these services.

2026, other than (i) a proposed payment of $60,000 to the Independent Directors; and (ii) $100,000 for the DIP Lender's own counsel. Neither of those payments constitutes an emergency or critical need for the Debtors' operations. The Debtors' Budget shows approximately $94,000 of existing cash on hand, which amount of cash remains on hand pursuant to the Budget through early December 2026 and appears to never get used throughout the Budget. Simply stated, there is no operational emergency requiring the approval of any DIP financing at this point, let alone the immediate approval of an interim advance of $1,528,454 (followed by a further request to borrow an additional $4,985,301 for a total of $6,513,846).

6. Moreover, it is clear from the Budget that **no portion** of the entire proposed DIP financing is required to fund the Debtors' business operations. Rather, such financing is principally used to pay the professionals in these chapter 11 cases, incredibly at an amount more than double the amount of the Debtors' operating expenses during the same period. Specifically, the 17-week Budget projects exactly $6,513,846 in proposed DIP borrowings and exactly $6,513,846 in payment of non-operating expenditures during precisely the same period; principally comprised of bankruptcy professional fees and expenses. The desire to pay professionals fees does not equate to an emergency for purposes of Section 364 of the Bankruptcy Code.

7. In addition, the proposed DIP financing and the substantial protections being offered by the Debtors to the DIP Lender is even more troubling and suspicious when the Court considers the identity of the DIP Lender, its close relationship to the Debtors in these cases, and their historic business dealings. ZHLP is an insider of the Debtors, is the Debtors' alleged prepetition lender, is the target of substantial bankruptcy estate causes of action, is the anticipated stalking-horse purchaser of the Debtors' assets, and is an entity that Gray contends (and the facts support) is ZHI's alter ego and should be substantively consolidated with ZHI (as more fully

discussed below). Yet the proposed DIP Loan Motion would improve ZHLP's position at every level at the expense of the Debtors and the estates, including by elevating ZHLP to a senior postpetition lender, rolling what the Debtors describe as approximately $3.8 million of its prepetition (questionable) debt into superpriority DIP loan debt, granting it sweeping and immediate liens and super-priority administrative claims over all assets (including all causes of action against ZHLP and proceeds from all Chapter 5 avoidance actions), granting it broad releases with little to no ability to investigate claims being released, granting it control rights over the sale process, and providing it with an unrestricted credit-bid right to acquire the Debtors' assets. In substance, the main target of substantial estate and creditor claims proposes to finance these cases for its sole benefit and exercise substantial control over a bankruptcy process that appears designed to culminate in its acquisition of the Debtors' assets free and clear, thereby skirting causes of action for substantive consolidation and substantial fraudulent transfer claims, leaving nothing for unsecured creditors.

8. Still further, the purported $3.8 million prepetition secured claim alleged to exist in favor of ZHLP appears more than questionable. Pursuant to the DIP Loan Motion, the purported lending relationship began on February 4, 2026, approximately four months after the Verdict and before entry of the Gray Judgment. However, while not mentioned in the DIP Loan Motion, ZHLP did not file a UCC-1 financing statement purporting to perfect its blanket lien on the Debtors' assets until June 26, 2026 — more than 120 days after the loan was made and liens purportedly granted, after entry of the Gray Judgment and approximately four months before the Petition Date of October 30, 2026.[4] The chronology of the Verdict, the February 2026 loan, the entry of the Gray Judgment, and the recording of the UCC-1 in June 2026 presents, at minimum, a serious

[4] The UCC-1 Financing Statement is attached hereto as Exhibit A.

issue concerning whether the perfection of the asserted lien is avoidable[5] under section 547 as an insider preference and whether ZHLP is secured at all. Yet, the Debtors are "rolling over" in respect of such preference claim under the DIP Loan Motion and stipulating to the validity of such prepetition loan.

9. There is another fundamental unanswered question concerning the underlying pre-petition secured debt purportedly owed to ZHLP: why did ZHI suddenly need to borrow $3.8 million from ZHLP beginning in February 2026, and what happened to that money? For years, it appears as though ZHLP paid ZHI a management fee to cover the costs that ZHI had incurred operating substantial portions of ZHLP's business. Yet after the Verdict, ZHLP suddenly became ZHI's secured lender. The DIP Loan Motion and related DIP Declaration do not trace the advances, explain what expenses they funded, or establish whether those expenses actually represented the same costs that ZHLP previously paid or reimbursed as a management fee to ZHI under the Management Services Agreement. If the costs previously payable by ZHLP as a fee under that management services arrangement were instead funded through purported "loans" starting in February 2026 after the Verdict, then the effect is clearly to transform ZHLP's own obligation to pay a management fee to ZHI to cover ZHI's operating expenses for the benefit of ZHLP into secured obligations owed by ZHI, with the result being the creation of a debt that would be payable ahead of Gray and other unsecured creditors. In fact, the First Day Declaration supports this conclusion wherein it states that there were "several subsequent advances … made under the Facility (on March 12, May 7, May 28, June 25, July 31, September 10, and October 21)." *See* First Day Decl. ¶ 19. The timing of these advances clearly reflect monthly reimbursements to ZHI for costs it incurred on ZHLP's benefit for management services.

[5] Additionally, this purported lien may be avoidable as a fraudulent transfer.

10. These facts and circumstances also raise a substantial recharacterization issue. Would an unrelated lender have advanced millions of dollars to ZHI in February 2026? By then, ZHI faced the Verdict of approximately $296 million, and upon information and belief, had substantially depleted its capital during 2025, had ended 2025 with a shareholder deficit, and depended substantially upon payments from ZHLP for its revenue, without any possibility of profit from the ZHLP management agreement. The Court should determine whether ZHLP was acting as a genuine arm's-length lender or simply funding a commonly controlled enterprise whose employees and infrastructure ZHLP itself required to conduct its own operations, before accepting the characterization of these advances as secured debt.

11. The proposed Challenge Period in the DIP Loan Motion does not eliminate these concerns but highlights them. Gray recognizes that the proposed DIP Order preserves a period during which a Committee and certain other parties (who are required to obtain standing first) may challenge the Debtors' stipulations concerning ZHLP's prepetition debt and liens, failing which broad releases are granted to the DIP Lender. But that raises rather than answers the central question: why are the Debtors themselves stipulating to the validity, perfection, priority and nonavoidability of ZHLP's insider claim? Why are the Debtors, while acting as fiduciaries, effectively placing the burden on creditors to undo those stipulations—subject to a proposed meager $25,000 investigation cap—rather than independently investigating and preserving what appears facially to be a substantial preference, recharacterization and related-party claims?

12. Those questions are particularly serious because the Debtors' own CRO has already determined that ZHLP warrants investigation. The First Day Declaration admits that SOLIC investigated potential claims against ZHLP and other insiders involving transfers and successor liability, reviewed books and records, analyzed potentially avoidable transfers, interviewed

employees, and identified intercompany claims. *See* First Day Decl. ¶ 35. That investigation purportedly resulted in an actual demand by ZHI against ZHLP, which the CRO states that ZHLP disputes. The First Day Declaration does not provide any details about those alleged claims against ZHLP, the quantum and/or basis of the demand, the defenses asserted by ZHLP and whether those discussions resulted in anything other than the one-sided DIP Loan Motion being presented to the Court that has substantial issues. To be clear, it now appears that the Debtors, despite having asserted substantial claims against the DIP Lender, are proposing to stipulate to its secured claim, roll that claim into the DIP loan, grant it postpetition liens and other protections, grant it broad releases and permit it to credit bid those obligations to acquire the Debtors' assets, all in exchange for paying professional fees with no benefit whatsoever to unsecured creditors or disclosures on the various claims.

13. In addition to the above, the broader prepetition relationship between ZHLP and the Debtors provides additional reason for caution on the part of this Court. The Debtors characterize ZHI and ZHLP as sharing only "some common ownership," but upon information and belief, Gray understands that the Debtors and the DIP Lender are each controlled and predominantly owned - through several layers of U.S. and foreign entities - ultimately by two brothers, Bernardus Johannes Paulus van Veggel and Thomas Johannes Petrus van Veggel. Moreover, ZHI and ZHLP shared executive management, offices, personnel and business functions. ZHI supplied ZHLP's workforce and operational infrastructure. Their corporate names are virtually identical. ZHLP used ZHI's "ZOM Living" brand, and importantly, ZHI and ZHLP jointly guaranteed substantial project debt for projects owned by ZHLP and as such are economically intertwined. The First Day Declaration admits that ZHI and ZHLP remain co-guarantors on five real estate projects today. *See* First Day Decl. ¶ 16. Incredibly, the First Day

Declaration seems more concerned with preserving the value of ZHLP rather than the Debtors when it states "[i]f ZHI defaults on those guarantees, it would cross-default the loans, **significantly reducing any value of ZHLP**." *See* First Day Decl. ¶36 (emphasis added).[6]

14. In addition, upon information and belief, ZHI and ZHLP operate as a single enterprise in substance. The Debtors and ZHLP, upon information and belief, have shared and continue to share the same core executive management team, including Greg West (CEO), Jonathan Young (CFO) and Matthew Adler (CIO). *See* First Day Decl. ¶9.

15. The movement of money among these supposedly separate entities is equally significant. Upon information and belief, during 2025, while the Gray litigation was pending and before the Verdict, substantial sums moved among ZHI, ZHLP, ZHI's direct and indirect parent entities, other entities associated with the van Veggel brothers, and the van Veggel brothers personally, including same-day transfers in which funds moved from ZHLP through ZHI to ZHI's indirect parent and back again, and payments to the van Veggel brothers and to Dutch entities associated with them. During 2025, ZHI also is believed to have made millions in distributions in the form of dividends and returns of capital, substantially reducing its paid-in capital and leaving it with a shareholder deficit. These transfers warrant investigation, and Gray anticipates presenting further detail, consistent with any applicable confidentiality obligations and, where necessary, under seal, as the record develops.

16. The above timing, transactions, relationships and questions are very troubling and warrant investigation, not emergency validation of ZHLP's position through the DIP Loan Motion.

[6] The First Day Declaration describes the Debtors' principal assets as: "top-tier workforce, trademarks, insurance policies, office equipment, décor, furniture, development interests, and causes of action." Other than the causes of action against the DIP Lender, those assets, standing alone, appear to have little value to the creditors of these cases. This further raises questions as to the need for these chapter 11 cases and the millions of dollars of loans to fund professionals to effectuate a sale of these assets. Among other things, it is axiomatic that a "top-tier workforce" cannot be sold.

While Gray's claims were pending, substantial value moved out of ZHI and through the commonly controlled enterprise. In February 2026, ZHLP became ZHI's purported secured lender. After entry of the Gray Judgment, ZHLP perfected its asserted blanket lien on June 26, 2026. Now, four months later, ZHLP seeks to have its insider debt rolled into a superpriority DIP obligation and used as currency to acquire the Debtors' assets, all at the expense of the unsecured creditors.

17. These same facts present substantial issues under *Eastgroup Properties v. Southern Motel Association, Ltd.*, 935 F.2d 245 (11th Cir. 1991), and *In re: No Rust Rebar, Inc.*, 177 F.4th 1161 (11th Cir. 2026), concerning substantive consolidation of ZHI and ZHLP. The substantive-consolidation standard stated in *Eastgroup Properties* focuses on a showing of substantial identity between the entities and that consolidation is necessary to avoid harm or realize benefit. The relevant considerations include unity of interests and ownership, intercompany guarantees, difficulty segregating assets and liabilities, transfers without formal observance of corporate formalities, commingling of assets or business functions, undercapitalization, and whether an entity transacts essentially only with its affiliate.

18. As outlined above, virtually all of those elements exist in the present case and are mostly admitted by the Debtors in their pleadings. Specifically, the Debtors have admitted that ZHLP was created during a tax restructuring of ZHI's existing development business and acquired ZHI investments and pre-acquisition costs; uses the Debtors' employees and administrative infrastructure; uses ZHI-owned ZOM trademarks; shares project guarantees with ZHI where ZHI does not have ownership in the project; depends on ZHI guarantees whose default allegedly threatens ZHLP's value; and reimburses the Debtors "at cost" for the services used to operate ZHLP. *See* First Day Decl. ¶¶ 14–18, 36; DIP Decl. ¶ 9. Lastly, as is evident from the Budget and

the DIP Declaration, the Debtors primarily engage in business with ZHLP for no profit. *See* DIP Decl. ¶ 9.

19. The Eleventh Circuit recently reaffirmed *Eastgroup* and the bankruptcy court's power to substantively consolidate non-debtor alter egos. *See No Rust Rebar,* 177 F.4th at 1165-1166. *No Rust Rebar* explains that substantive consolidation addresses threshold questions concerning who the debtor is and what property comprises the estate and is useful where nominally distinct entities in fact share a substantial identity.

20. Gray does not ask the Court to decide substantive consolidation, avoidance, recharacterization or alter ego at this hearing. Rather, Gray asks the Court to proceed with extreme caution and not to prejudice those issues through an emergency DIP Order seeking funding that is simply not needed before creditors and the United States Trustee have conducted discovery and a fulsome record can be established.

21. As set forth in detail above, there is simply no immediate need to approve any DIP financing based on the Debtors' own filings. The Budget demonstrates that the Debtors' operations are being funded without the proposed DIP financing and that the "immediate need" for any new money principally concerns bankruptcy professional fees, including the proposed DIP Lender's attorneys' fees, not preservation of the business operations. Any purported need does not arise until late November, if at all.[7]

22. Based on the above, Gray asserts that no interim DIP financing is needed. Instead, this Court should only: permit genuinely necessary operations to continue and, if necessary, authorize limited use of existing cash collateral with minimal basic protections pending a

[7] The proposed use of DIP Financing during the week November 27, 2026, is to pay professionals. However, there is no disclosure as to the retainers held by the Debtors' professionals and there is no reasonable expectation that the Court will have allowed payments to the Debtors' professionals by such date.

determination of the validity of ZHLP's prepetition debt, while preserving the status quo. There should be no DIP financing approved at this time, no roll-up, no stipulations from the Debtors as to ZHLP's prepetition lien or any other matters, no protections to the DIP Lender, no lien or super-priority claim on causes of action against ZHLP or other insiders, no lien or super-priority claim on Chapter 5 avoidance actions, no releases in favor of ZHLP or any other insiders, and no unconditional credit-bid right until the underlying transactions have been investigated. The Challenge Period should likewise be eliminated or extended pending further order of the Court so as to provide parties in interest sufficient time to undertake the substantial investigation required based on the above.

23. Put simply, there is no emergency here because the cost of the voluntary bankruptcy itself cannot be treated as an emergency. The Debtors should not be permitted to use manufactured urgency to convert a recently perfected and potentially avoidable insider lien into postpetition, superpriority debt, while the same insider stands on both sides of the case as lender, putative defendant and anticipated purchaser. The Court should preserve the business, preserve all of the estate's claims, not approve any DIP financing at this time, not grant any protections to the DIP Lender, preserve all challenges to and claims against ZHLP, and preserve the creditors' ability to demonstrate that ZHI and ZHLP are, in substance, one enterprise. The Debtors' own Budget and filings demonstrate that there is no need for this Court to sacrifice these important rights.

Wherefore, Gray respectfully requests that the Court deny the DIP Loan Motion as proposed and limit any interim relief to the use of cash collateral only with minimal protections as set forth above and grant such other and further relief as the Court deems just and proper.

DATED: November 3, 2026.

Respectfully submitted,

**VENABLE LLP**
*Attorneys for Gray Services, LLC and Gray Development Group, LLC*

*/s/ Paul J. Battista*
Paul J. Battista, Esq.
Florida Bar No. 884162
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Phone: 305.349.2300
Email: pjbattista@Venable.com

- and -

Eric D. Jacobs, Esq.
Florida Bar No. 85992
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Phone: 813.439.3100
Email: ejacobs@venable.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 3, 2026, a true and correct copy of the foregoing document was furnished electronically by virtue of the Court's CM/ECF System to all parties who have requested or consented to electronic service in this case.

*/s/ Paul J. Battista*
Paul J. Battista, Esq.

# EXHIBIT A

## UCC-1 FINANCING STATEMENT

[redacted]

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

FILED

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

2026 Jun 26 03:36 PM

****** 202601871219 ******

Print Reset

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME
ZOM Holding, Inc.

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1511 E. State Route 434, Suite 1005 | Winter Springs | FL | 32708 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME
ZOM Holding, LP

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1511 East State Road 434, Suite 1005 | Winter Springs | FL | 32708 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All Assets of the Debtor, whether now existing or hereafter acquired.

Florida Documentary Stamp Tax is not required.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Filed with FL SOS